**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| WALMART PUERTO RICO, INC. | CASE NO. 19-cv-01934 |
| Plaintiff | |
| v. | RE: RICO; MAIL & WIRE FRAUD; BREACH OF CONTRACT |
| EDWARD LANZA; VINCENT T. FRISONE, JR.; SOCAL DISTRIBUTORS, LLC; L & V DISTRIBUTORS; JOHN DOE; ABC INSURANCE COMPANY | PLAINTIFF DEMANDS TRIAL BY JURY |
| Defendants | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff Wal-Mart Puerto Rico, Inc, ("Walmart"), through the undersigned counsel and very respectfully tenders this Complaint and moves the Court to grant the relief requested herein.

## I.   NATURE OF THE SUIT

1.     Defendants continually committed fraud in the purchase of goods from Walmart's stores. Specifically, Defendants made multiple credit-card purchases of Mountain Dew and Pepsi from its Sam's Club Store located at Kennedy Avenue in San Juan, Puerto Rico. However, on multiple occasions, and after Defendants' payment posted and Walmart shipped the merchandise, Defendants baselessly disputed the credit card charges. Upon being required to reverse these chargebacks, Defendants did not do so, instead continuing to dispute additional charges. Walmart now petitions the Court

1

for the recoupment of these charges, along with damages, attorney's fees, costs, and any other remedy proper under law or in equity.

## II.     JURISDICTION AND VENUE

2.      This Court has jurisdiction over Walmart's RICO, Mail Fraud, and Wire Fraud claims pursuant to 28 U.S.C. § 1331, which grants district courts jurisdiction over all civil actions arising under the laws of the United States.

3.      This Court has supplemental jurisdiction over Walmart's state law claims pursuant to 28 U.S.C. § 1367(a), which grants district courts supplemental jurisdiction over pendent state claims based on the same nucleus of operative facts as claims arising under courts' original jurisdiction. In the alternative, this Court has jurisdiction over Walmart's state law claims pursuant to 28 U.S.C.  § 1332, because there is diversity of citizenship between Walmart and Defendants, and the amount in controversy exceeds $75,000.00.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial portion of the transactions between Walmart and Defendants occurred herein.

## III.     PARTIES

5.      Walmart is a Puerto Rican corporation, which operates and owns Walmart, Sam's Club, and Amigo stores throughout the island, including the Sam's Club store located at Kennedy Avenue in San Juan, Puerto Rico (the "Store"). Walmart's designated office address is Carr. # 1 Km 28.7, Barrio Río Canas, Caguas, PR, 00725, and its mailing address is PMB # 725 P.O. Box 4960, Caguas, PR 00726.

6.      Co-Defendant Edward Lanza ("Lanza") is a natural person and resident of Florida. His address is 761 Tulip Circle, Weston, Florida 33327. Along with other codefendants, Lanza is jointly liable to Walmart for the events alleged herein.

7.      Co-Defendant SoCal Distributors, LLC ("SoCal") is a Floridian limited liability company, which principal place of business is located at 2700 Glades Circle 147B, Weston, Florida 33327. Co-Defendant Lanza is its registered agent and sole member. Along with other codefendants, SoCal is jointly liable to Walmart for the events alleged herein.

8.      Co-Defendant Vincent T. Frisone, Jr. ("Frisone") is a natural person and resident of Florida. His address is 174 SW 120TH LN., Coral Springs, Florida 33071. Frisone, although not liable to Walmart, is added hereto as an indispensable party, because Codefendants Lanza's and SoCal's fraudulent acts affected Frisone.

9.      Co-Defendant L & V Distributors, Inc. ("L&V") is a Floridian corporation, which principal address is 174 SW 120 Lane, Coral Springs, Florida 33071. Its owner and registered agent is Frisone. L&V, although not liable to Walmart, is added hereto as an indispensable party, because Codefendants Lanza's and SoCal's fraudulent acts affected L&V.

10.      John Doe is any unknown natural or juridical person who, along with other codefendants, is jointly liable to Walmart for the events alleged herein.

11.      ABC Insurance Company is an unknown insurance company, which has issued a policy in favor of any of the aforementioned co-defendants covering the events alleged herein.

## IV.   FACTS APPLICABLE TO ALL COUNTS

12.    Walmart owns and operates Sam's Club stores throughout Puerto Rico, including that which is located at Kennedy Avenue in San Juan, Puerto Rico.

13.    Sam's Club customers are generally required to purchase a membership as a condition precedent to any purchase therefrom.

14.    Frisone and L&V signed an export agreement with Walmart, through which they signaled that they would purchase from Walmart Pepsi and Mountain Dew products from its Kennedy Avenue Store.

15.    Frisone and L&V would export the aforementioned products to Saint Martin, representing that their purchased items were intended solely for use in that market.

16.    Frisone's and L&V's designated freight forwarder was Whoop Transport.

17.    Similarly, Lanza and SoCal also executed an export member agreement with Walmart, for the same kind of product and directed to the same market. However, Lanza's and SoCal's freight forwarder would be Terrasa Trucking, Inc.

18.    With regards to these export agreements, upon receiving payment by Defendants, Walmart would make available their purchases for pickup by their designated freight forwarders at the Store. Therefore, any transactions between the parties under these export agreements would be deemed complete upon receipt of the merchandise by the designated freight forwarders.

19.     On November 20, 2017, L&V—through codefendant Lanza—purchased $49,064.40 worth of goods from the Store with an American Express ("Amex") card ending in 2007, belonging to Lanza. Walmart understands that this purchase was made by Lanza in furtherance of SoCal's business enterprise and without L&V management's or Frisone's authorization.

20.     Shortly thereafter, on November 27, 2018, Frisone terminated Lanza's employment with L&V, due to the latter ordering and selling product under L&V's name to L&V customers. Walmart believes this termination was partly based on Lanza's November 20, 2017 purchase from the Store.

21.     On December 18, 2007, SoCal purchased $32,943.24 worth of goods from the Store with the Amex card ending in 2007.

22.     On January 2, 2018, SoCal purchased $33,644.16 worth of goods from the Store with the Amex card ending in 2007.

23.     On January 12, 2018, SoCal purchased $31,541.40 worth of goods from the Store with another Amex card ending in 1017.

24.     On January 18, 2018, Walmart received an adjustment to its Amex account, on account of a claim opened by the cardholder for the card ending in 2007, i.e. Lanza. Through this adjustment, Amex credited Lanza with $49,064.40 and debited the same amount from Walmart. This is the same amount as the purchase price for the November 20, 2017 purchase.

25.     On January 23, 2018, Walmart received an adjustment to its Amex account, on account of a claim opened by the cardholder for the card ending in 1017. Through this

adjustment, Amex credited the cardholder $31,541.40 and debited the same amount from

Walmart. This is the same amount as the purchase price for the January 12, 2018 purchase.

26.     On February 8, 2018, Walmart received an adjustment to its Amex account,

on account of a claim opened by the cardholder for the card ending in 1017. Through this

adjustment, Amex credited the cardholder $33,644.16 and debited the same amount from

Walmart. This is the same amount as the purchase price for the January 2, 2018 purchase.

27.     On March 6, 2018, SoCal purchased $14,904.00 worth of goods from the

Store with another Amex card ending in 3005, belonging to Lanza.

28.     On March 14, 2018, Walmart personnel contacted SoCal to clear up the

matters regarding the February 8, 2018 adjustment. Lanza replied on March 21, 2018 — a

week later — alleging that the shipment had been released to another person, upon

picking it up from the Store. Lanza also stated that he was in contact with law

enforcement.

29.     On March 26, 2018, Walmart personnel and Lanza spoke, and as a result

thereof, Lanza requested that Walmart provide it with documents necessary to resolve

the adjustments. Walmart emailed Lanza this information on March 28, 2018.

30.     On March 29, 2018, the day after the document exchange, SoCal recognized

that it owed Walmart $111,895.56. It represented that, out of that amount, $62,831.16 was

"done" and that Amex would be releasing the remaining $49,064.40. SoCal also stated

that these chargebacks were due to unspecified activities from unspecified former

companies associated with SoCal.

31.     As of April 4, 2018, Walmart had only received one payment from SoCal, amounting to $33,644.16, which was made on March 26, 2018. This amount corresponds to the January 2, 2018 purchase and the February 8, 2018 adjustment. Pursuant to Walmart's records, SoCal still owed Walmart $80,605.80.

32.     Notwithstanding, on the week of May 25, 2018, Walmart received another adjustment to its Amex account, on account of yet another claim opened by Lanza. Lanza now disputed a $14,904.40 charge—corresponding to the purchase price for the March 6, 2018 purchase.

33.     Lanza also filed another chargeback claim against Walmart, disputing an additional $32,943.24—corresponding to the purchase price of the December 18, 2017 purchase.

34.     In order to ascertain the veracity of Lanza's and SoCal's claims regarding missing or partial shipments, Walmart conducted an investigation with the shipping entities mentioned by LV and SoCal in their export member agreements.

35.     This investigation revealed that, for the November 20, 2017 and January 2, 2018 purchases, the corresponding shipments were picked up by Terrasa Trucking, Inc. from the Store under Lanza's instructions, while he acted on behalf of both LV and SoCal.

36.     Whoops Transport would then arrange for shipment of these items to various destinations throughout the mainland, including Washington, DC and Dallas, TX, pursuant to Lanza's and SoCal's instructions.

37.     In other words, the shipments which Lanza alleged were lost were instead picked up by his designated freight forwarder, following his instructions, and shipped pursuant to those same instructions.

38.     As of this date, Lanza has not paid the amounts corresponding to the purchases made November 20, 2017; December 18, 2017; January 12, 2018, or March 6, 2018. This amounts to $128,453.04.

## V.     COUNT I – RICO

39.     Walmart hereby incorporates and restates herein the allegations mentioned above.

40.     Section 1962(a) of Title 18 of the United States Code makes it unlawful for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

41.     Additionally, section 1962(a) of Title 18 makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

42.     Defendants Lanza and SoCal—along with SoCal's officers, agents, employees, and any other person acting on its behalf—established an enterprise which purpose was to obtain Walmart products at no charge to themselves through the employment of fraudulent credit card chargebacks.

43.     Defendants' conduct was continuous in the sense that purchases were repeatedly made by Lanza on behalf of SoCal and later disputed by Lanza at Walmart's prejudice. Indeed, as alleged above, within half a year, Defendants entered into no less than five (5) different purchases, for the same kind of product, purchased with cards from the same institution, all of which were later subjected to chargebacks.

44.     These chargebacks were made fraudulently, to the extent that the shipments in question had been picked up by the freight forwarder of Defendants' choosing, pursuant to their instructions, and forwarded to their destinations of choice. Therefore, Lanza had no reasonable grounds for entering into these disputes.

45.     As alleged in the following two (2) counts, Defendants' acts were predicate acts, to the extent that they constituted both mail and wire fraud.

46.     Pursuant to 18 U.S.C. § 1964, the claimant in a civil RICO suit is entitled to recover damages from the defendant and these damages must be trebled.

47.     Pursuant to Pursuant to 18 U.S.C. § 1964, the claimant is also entitled to the cost of the suit, including attorney's fees.

48.     Walmart has and continues to suffer damages as a result of Defendants' fraudulent disputes and chargebacks. As stated above, Defendants' chargebacks amount to $128,453.04, which, when trebled, rise to $385,359.12.

49.     Additionally, Walmart has suffered additional damages as a result of Defendants' fraudulent chargebacks, including fees and penalties charged by Amex on account thereof along with loss of revenue and income. Walmart estimates that these damages amount to $100,000.00, which rise to $300,000.00 when trebled.

## VI.    COUNT II – MAIL FRAUD

50.    Walmart hereby incorporates and restates herein the allegations mentioned above.

51.    Section 1341 of Title 18 of the United States Code makes it unlawful for any person to utilize the postal service or any other interstate carrier to commit fraud.

52.    As stated above, Defendants' actions towards Walmart constituted a scheme to defraud it out of money, and Defendants committed these actions with the intent to defraud.

53.    Defendants employed interstate carriers, including Terrasa Trucking, Inc. and Whoop Transport, in the furtherance of their scheme.

54.    Therefore, Defendants are liable to Walmart for their fraudulent activities, which require payment of damages to Walmart amounting to $228,453.04.

## VII.    COUNT III – WIRE FRAUD

55.    Walmart hereby incorporates and restates herein the allegations mentioned above.

56.    Section 1343 of Title 18 of the United States Code makes it unlawful for any person to utilize interstate wire communications to facilitate a scheme to defraud.

57.    Defendants' actions towards Walmart constituted a scheme to defraud it out of money, and Defendants committed these actions with the intent to defraud.

58.    Defendants used interstate wire communications to further this scheme.

59.    Therefore, Defendants are liable to Walmart for their fraudulent activities, which require payment of damages to Walmart amounting to $228,453.04.

## VIII.   COUNT IV – BREACH OF CONTRACT

60.     Walmart hereby incorporates and restates herein the allegations mentioned above.

61.     Article 1334 of the Puerto Rico Civil Code defines a sale as a form of contract. P.R. Laws Ann. tit. 31, §3741. These types of contracts are perfected and binding upon both the buyer and seller upon their agreement on the object of the contract and the price. P.R. Laws Ann. tit. 31, §3746. The promise of a purchase or sale gives either party the right to demand specific performance. P.R. Laws Ann. tit. 31, §3747.

62.     Further, the claimant is entitled to damages which, in the case of fraud include all of those which derive from the failure to perform. P.R. Laws Ann. tit. 31, §3024.

63.     In this case, the aforementioned purchases constituted binding purchase agreements between Walmart and Defendants.

64.     The latter, however, failed to perform their obligations thereunder, i.e. paying Walmart the price of the goods in question.

65.     Walmart therefore demands Defendants' specific performance of their obligations, and that this Court grant Walmart damages for Defendants' breach of contract. Walmart's damages amount to $228,453.04.

## VII.   COUNT V – BREACH OF EXPORT MEMBER AGREEMENT

66.     Walmart hereby incorporates and restates herein the allegations mentioned above.

67. The export member agreement executed between Lanza, SoCal and Walmart stated that the formers' purchases were solely intended for export to Saint Martin.

68. Notwithstanding, Lanza had the goods purchased from Walmart delivered throughout the mainland, to different retail outlets.

69. Based on this pattern, Walmart believes that the products Lanza purchased were not intended for export to Saint Martin, but for resale throughout the mainland, thereby constituting a breach of contract.

70. Walmart therefore moves the Court for injunctive relief, enjoining Defendants from the sale of Walmart products throughout the mainland.

71. Walmart also moves the Court for damages caused as a result of Defendants' breach of the export member agreement, which amount to $228,453.04.

## VIII.   COUNT VI – BREACH OF COVENANT OF GOOD FAITH AND DEALING

72. Walmart hereby incorporates and restates herein the allegations mentioned above.

73. Under Puerto Rico law, parties to a contract are required to approach and deal with each other with good faith. See P.R. Laws Ann. tit. 31, § 3375.

74. Defendants' aforementioned acts, decidedly fraudulent in nature, violate this duty.

75.     Walmart has suffered damages as a result of Defendants' fraudulent and

bad-faith acts, which amount to $228,453.04 and moves the Court for an award of

damages against Defendants for such amount.

**WHEREFORE**, Walmart moves the Court to grant the following relief:

- The payment by Defendants of all moneys owed by them to Walmart, which are no less than $228,453.04, and must be trebled pursuant to applicable law;

- Additional damages suffered by Walmart, also trebled pursuant to applicable law;

- An injunction against further breaches by Defendants of the Export Member Agreement;

- Attorney's fees and costs, and

- Any other relief proper under law or in equity.

**RESPECTFULLY SUBMITTED**, in Guaynabo, Puerto Rico, this 30 day of

September 2019.

**MONSERRATE SIMONET & GIERBOLINI**
101 San Patricio Ave., Suite 1120
Guaynabo, PR 00968
Tel. (787) 620-5300
Fax (787) 620-5305

*s/ Dora L. Monserrate-Peñagarícano*
Dora L. Monserrate-Peñagarícano
U.S.D.C.- P.R. No. 212,612
Email: dmonserrate@msglawpr.com

*s/ Fernando J. Gierbolini González*
Fernando J. Gierbolini González
U.S.D.C.- P.R. No. 211,901
Email: fgierbolini@msglawpr.com

13